IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:14-cv-120 (WOB-CJS)

TASHA DAY                                              PLAINTIFF

VS.

PERSONAL SERVICE INSURANCE
COMPANY, ET AL                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendants' Motion to Bifurcate (Doc. 8) and Defendants' Motion for Summary Judgment (Doc. 13).

The Court previously heard oral argument on these motions, after which it took them under advisement. (Doc.  ). After further study, the Court now issues the following Memorandum Opinion and Order.

### I. Factual and Procedural Background

On January 13, 2011, Plaintiff was involved in a car accident in Campbell County, Kentucky when Lynn Siebler improperly changed lanes on Interstate 471. Plaintiff drove onto the shoulder of the Interstate in an effort to avoid a collision with Siebler. Because it had recently snowed, and the snow had been plowed onto the shoulder of the Interstate, Plaintiff was unable to avoid hitting a snow bank and ice. Plaintiff's car

spun out of control, crossed three lanes of traffic, and crashed down a hillside into a ditch in the median. Plaintiff's car was totaled, and Plaintiff suffered serious injuries.

Prior to the accident, Defendant issued Plaintiff an automobile policy ("Policy"). The Policy insured three vehicles: a 2001 Ford Ranger, a 2001 Pontiac Grand Am, and a 1998 Jeep Grand Cherokee. The Policy provided for Underinsured Motorist ("UIM") benefits in the amount of $12,500 per person, $25,000 per occurrence, and all three vehicles carried separate premiums. The Policy contained anti-stacking and set-off provisions. The Policy also contained a notice provision that required Plaintiff to provide written notice to Defendant of any legal action against an underinsured motor vehicle operator.

Plaintiff filed a lawsuit against Siebler after the accident and settled with Siebler's insurer for Siebler's policy limit of $100,000 on August 1, 2013. Plaintiff executed a Settlement and Release Agreement ("Settlement") to document the settlement with Siebler's insurer. The Settlement released Siebler, her insurer, and "all other persons, firms, or corporations liable . . . from any and all claims . . . as the result of an accident." (Mot. for Summ. J. at 3). There is no evidence of record that Plaintiff notified Defendant of the Settlement prior to its execution. The funds received from the Settlement did not cover all of Plaintiff's damages from the accident.

-2-

Plaintiff requested that Defendant pay her UIM benefits in the amount of the damages she suffered in excess of the funds that she received from the Settlement. Defendant refused, and Plaintiff brought this action alleging breach of contract and bad faith.

Defendant has filed a motion to bifurcate the proceedings and hold in abeyance Plaintiff's bad faith claim. Defendant has also filed a motion for summary judgment on all claims.

## II. ANALYSIS

### A. Ohio Law's Applicability to the Policy

Defendant argues that Ohio law should govern the Policy because Kentucky courts have recognized, using the "most significant relationship" test, that the law of the residence of the named insured will determine the scope of the coverage. Defendant argues that because Plaintiff is an Ohio resident, Ohio law should govern the Policy.

Plaintiff argues that Kentucky law does not apply the traditional "most significant relationship" test when applying another state's law would violate Kentucky's public policy. Plaintiff argues that applying Ohio law would violate Kentucky's public policy against set-off and anti-stacking provisions in automobile insurance policies.

In order to determine which law applies, the modern test is which state has the most significant relationship to the

transaction and the parties. *Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579, 581 (Ky. 1977) (citation omitted) (internal quotation marks omitted). Using this test, in most cases the law of the residence of the named insured will determine the scope of his automobile liability insurance policy. *Id.* at 582.

Here, Plaintiff resides in Ohio, the Policy was issued in Ohio, and the only contact with Kentucky is that the accident occurred there. Therefore, Ohio law governs the parties' rights and responsibilities under the Policy "absent some compelling reason" not to apply Kentucky's general choice-of-law rule. *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 879 (Ky. 2013).

Contracts voluntarily made between competent persons are not be set aside lightly. *Id.* at 880 (citing *Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954)). Public policy, invoked to bar the enforcement of a contract, is not simply something courts establish from general considerations of supposed public interest, but rather something that must be found clearly expressed in the applicable law. *Id.* at 880-881 (citing *Ky. Farm Bureau Mut. Ins. Co. v. Thompson*, 1 S.W.3d 475, 476-477 (Ky. 1999)).

There is certainly authority that indicates set-off provisions in insurance contracts are against Kentucky public policy. *See* KY. REV. STAT. ANN. § 304.39-320(2) (requiring an

insurance company to make available UIM coverage and pay its insured for uncompensated damages she may recover on account of injury due to a motor vehicle accident). *See also Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 898 (Ky. 1993) ("All of the coverage in the [Motor Vehicle Reparations Act] is so provided to carry out the '*policy and purpose*' of the statute . . ..") (emphasis added). However, even if this Court were to construe set-off and anti-stacking provisions in insurance contracts as against Kentucky public policy, the question would then become "whether the public policy was so strong as to require a Kentucky court to interject Kentucky law into a dispute having none but a fortuitous connection with Kentucky." *Hodgkiss-Warrick*, 413 S.W.3d at 882.

The fact that a contract, if made in Kentucky, would not be enforceable as a matter of public policy does not necessarily mean that it is against Kentucky public policy to enforce such a contract when valid where made. *Id.* (citation omitted). The Kentucky public policy against enforcement must be a substantial one, a well-founded rule of domestic policy established to protect the morals, safety, and welfare of *our* people. *Id.* (citation omitted) (internal quotation marks omitted). Where no Kentucky resident has been affected, rarely will that standard be met. *Id.*

In *Hodgkiss-Warrick*, a case not cited by either party, the

Supreme Court of Kentucky addressed a very similar set of facts. A plaintiff brought suit against her insurer and alleged that a "regular use" provision embedded in the UIM coverage under her insurance policy was unenforceable because it violated Kentucky public policy. 413 S.W.3d at 878. The plaintiff was a Pennsylvania resident, and the only connection to Kentucky was that the accident occurred there. *Id.* at 879. The contract was entered into in Pennsylvania, and it covered primarily vehicles that the plaintiff registered, garaged, and used exclusively in Pennsylvania. *Id.* The Court held that those facts were insufficient to override traditional choice-of-law principles and interject Kentucky law. *See id.* at 883 ("Since here no Kentucky resident is affected, nothing requires a Kentucky court to interfere with the balance Pennsylvania has chosen for its citizens.").

Here, Plaintiff is an Ohio resident who entered into an insurance contract in Ohio. The *only* connection to Kentucky is that the accident occurred here. This connection is insufficient to override traditional choice-of-law principles and interject Kentucky law into a dispute that would ordinarily be governed by Ohio law.

Plaintiff cites an unpublished Kentucky Court of Appeals case for the proposition that Ohio law should not apply in this case because the Policy's set-off and anti-stacking provisions

conflict with Kentucky public policy. *See Ward v. Nationwide Assurance Co.*, No. 2012-CA-000809-MR, 2013 WL 5051677 (Ky. Ct. App. 2013), *vacated* (June 11, 2014). However, *Ward* was vacated and therefore does not alter the analysis in this case. Further, *Ward* is contrary to *Hodgkiss-Warrick*, *supra*.

## II. Enforceability of Set-Off and Anti-Stacking Provisions Under Ohio Law

Under Ohio law, UIM coverage is not excess coverage to other applicable liability coverage, and the policy limits of the UIM coverage must "be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." OHIO REV. CODE ANN. § 3937.18(C). In accordance with O.R.C. § 3937.18(C), the Supreme Court of Ohio has held that UIM coverage was not intended to be excess insurance to the tortfeasor's applicable liability insurance, and that the "amounts available for payment" are the amounts the insured actually recovers from a tortfeasor whose liability policy is subject to the claim of the insured. *Clark v. Scarpelli*, 744 N.E.2d 719, 725 (Ohio 2001).

Here, Plaintiff recovered $100,000 from Siebler's insurer, which is an amount greater than Plaintiff's UIM benefits under the Policy. Therefore, under Ohio law, the Policy's set-off provision is enforceable and Plaintiff is barred from recovering UIM benefits.

Because Ohio law resolves this issue, the Court need not address the parties' remaining arguments.

Therefore, having heard the parties, and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) Defendants' Motion for Summary Judgment (Doc. 13) be, and is hereby, **GRANTED.**

(2) Defendants' Motion to Bifurcate (Doc. 8) be, and is hereby, **DENIED AS MOOT.**

(3) A separate judgment shall enter concurrently herewith.

This 5th day of December, 2014.



Signed By:
*William O. Bertelsman* WOB
United States District Judge